*EXHIBIT "A"*

*EXHIBIT "A"*

Date Prepared: _____

## CONDOMINIUM SALE AND PURCHASE AGREEMENT
## LATITUDE DELRAY BEACH, A CONDOMINIUM

THIS CONDOMINIUM SALE AND PURCHASE AGREEMENT (this "Agreement") is made and entered into by and between SAVION HOLDINGS, LLC, a Florida limited liability company ("Seller"), whose address is 766 S.E. 5th Avenue, Delray Beach, Florida 33483, and _Amit Patel_ ("Buyer") whose local address is _216 Northlands Drive, Cary, NC 27519_; whose permanent address is _2417 Arbor View Drive, Cary NC 27519_ _216 Northlands Drive_; Residential Telephone - Number: _919 234-2677_; Office Telephone Number: _919 624-3189_; Social Security No.: _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_.

**ORAL REPRESENTATIONS CANNOT BE RELIED UPON AS CORRECTLY STATING THE REPRESENTATIONS OF THE DEVELOPER (SELLER). FOR CORRECT REPRESENTATIONS, REFERENCE SHOULD BE MADE TO THIS CONTRACT (AGREEMENT) AND THE DOCUMENTS REQUIRED BY SECTION 718.503, FLORIDA STATUTES, TO BE FURNISHED BY A DEVELOPER (SELLER) TO BUYER OR LESSEE.**

**ANY PAYMENT IN EXCESS OF TEN PERCENT (10%) OF THE PURCHASE PRICE MADE TO DEVELOPER (SELLER) PRIOR TO CLOSING PURSUANT TO THIS AGREEMENT MAY BE USED FOR CONSTRUCTION PURPOSES BY THE DEVELOPER (SELLER).**

In consideration of the terms and conditions hereafter set forth, Seller agrees to sell and Buyer agrees to purchase the following described real property (the "Unit") located in Delray Beach, Palm Beach County, Florida:

That certain Condominium Unit # _C-9-207_, in Building _9_, at LATITUDE DELRAY BEACH, A CONDOMINIUM, and an undivided share in the common elements appurtenant thereto, in accordance with and subject to the covenants, conditions, restrictions, terms and other provisions of that certain Declaration of Condominium of LATITUDE DELRAY BEACH, A CONDOMINIUM (the "Condominium") and all of its exhibits and attachments, as recorded in the public records of Palm Beach County, Florida.

The Condominium shall be located within and be a part of a mixed use community to be known as Latitude Delray Beach and is subject to the "Master Declaration", as such term is hereinafter defined.

1. **PURCHASE AND SALE.** Buyer agrees to buy and Seller agrees to sell (on the terms and conditions contained in this Agreement) the above-mentioned Unit. The Total Purchase Price for the Unit is $_336,000.00_ payable in United States dollars as follows:

| PAYMENT | DUE DATE | AMOUNT |
|---|---|---|
| Initial Deposit 10% of Total Purchase Price | Upon execution of this Agreement. | $_33,600.00_ |
| Second Deposit 10% of Total Purchase Price | 10 days after groundbreaking for the construction of improvements for the Condominium | $_33,600.00_ |
| Balance | At closing | $_268,800.00_ |
| **TOTAL PURCHASE PRICE** | | $_336,000.00_ |

All of the deposits described above, together with any other deposits made by Buyer towards payment of the Total Purchase Price, are herein collectively called the "Deposits". Deposits may be made by check (subject to clearance) or cash. The balance due at closing must be paid by certified check, bank check or wire transfer of federal funds.

The Purchase Price also includes the exclusive use of one parking space to be located within the Common Elements. At Closing, Buyer will receive an assignment of the exclusive right to use such parking space, said space to be selected by Seller or its designee.

2. **SELLER'S FINANCING.** Seller may borrow money from lenders to construct the Condominium. Buyer agrees that any lender advancing funds to Seller for Seller's use in connection with the Condominium will have a prior mortgage on the Unit and the Condominium until closing. At that time, Seller may use all the proceeds of Buyer's purchase which are necessary to release the Unit from the then applicable mortgages for the purpose of obtaining those releases. Neither this Agreement, nor Buyer's payment of the Deposits, will give Buyer any lien or claim against the Unit or the Condominium. Without limiting the generality of the foregoing, Buyer's rights under this Agreement will be subordinate to all mortgages (and all modifications made to those mortgages) that secure the advancement of construction funds, whether made or recorded before or after the date of this Agreement.

3. **CONSTRUCTION.** The following provisions will apply if the construction and furnishing of the Unit and of the Condominium in which the Unit is located are not substantially complete on the date of this Agreement (if the Unit is now completed, the Buyer hereby acknowledges having inspected and approved it, and that Buyer is buying the Unit "AS IS" except as indicated on any addendum):

(a) Construction. Seller agrees to construct the Unit in substantial conformance with the plans and specifications on file in Seller's local Sales Center office ("Seller's Plans and Specifications"), which Buyer can inspect upon reasonable notice. Buyer acknowledges that the Seller's Plans and Specifications for the Unit and of the improvements to the common elements of the Condominium appurtenant to the Unit have been made available by Seller for inspection. Buyer understands that the Unit may be the reverse or mirror image of the floor plan of any model or that shown on Seller's sales brochures or other materials. Buyer understands dimensions shown in Seller's plans, and in any sales brochure, are approximate and may change due to field conditions. Buyer understands any existing model may contain items or special features which are not included in Buyer's purchase, such as furnishings and decorations, accessories, special window treatments, upgraded carpeting and flooring, special wall treatments, upgraded fixtures and special lighting effects, and extra appliances. Buyer understands the Total Purchase Price only includes the construction of Buyer's Unit pursuant to Seller's Plans and Specifications and those items or extras in a list attached to this Agreement, if any. Seller reserves the right without liability to Buyer to make any modifications, changes or omissions to the Unit or Condominium common elements as long as they do not substantially and adversely affect Buyer, or if they are required by any governmental authority, and to substitute materials, equipment, cabinets, fixtures, appliances, and/or bathroom floor coverings with items of similar or greater quality. Buyer understands and agrees that changes in the dimensions of rooms and balconies and in the location of telephone, electric, cable T.V. and other utility outlets, windows, doors, walls, partitions, lighting fixtures, electric panel boxes and the general layout of the Unit are subject to change made by Seller in its sole discretion. Buyer understands materials used in the construction such as brick, wood, paint, tile, marble, and the like, are subject to shading and gradation and may vary from samples, models or color charts, and from piece to piece, and Seller will not be liable for such variation. Seller will have complete discretion in "finishing details," including, but not limited to, the exterior of the building, landscaping, amenities, and beautification of the Condominium.

Buyer acknowledges and agrees that it is a widely observed construction industry practice for pre-construction plans and specifications for any unit or building to be changed and adjusted from time to time in order to accommodate ongoing "in the field" construction needs. These changes and adjustments are essential in order to permit all components of the units and the building to be integrated into a well functioning and aesthetically pleasing product in an expeditious manner. Because of the foregoing, Buyer acknowledges and agrees that it is to Buyer's benefit to allow Seller to make such changes to the Unit and the Condominium.

Buyer fully understands that the Seller's Plans and Specifications for the Condominium and the Unit describe "proposed improvements" to be "constructed", and that the realities of construction are such that the final building and improvements will, in all likelihood, contain variations and minor deviations from the aforementioned plans and specifications. Buyer agrees that Buyer's execution of this Agreement, and closing on the Unit, are not made in reliance upon the aforementioned Seller's Plans and Specifications.

Buyer further acknowledges and agrees that (i) the plans and specifications for the Unit and the Condominium on file with applicable governmental authorities may not, initially, be identical in detail to Seller's Plans and Specifications and, (ii) because of the day-to-day nature of the changes described in this Paragraph 3, the plans and specifications on file with the local governmental authorities may not include some or any of the changes (there being no legal requirement to file all changes with such authorities).

As a result of the foregoing, Buyer and Seller both acknowledge and agree:

The Unit and the Condominium may not be constructed in accordance with the plans and specifications on file with applicable governmental authorities. Without limiting the generality of Paragraph 8 below, Seller disclaims and Buyer waives any and all express or implied warranties that construction will be accomplished in compliance with such plans and specifications. Seller has not given and Buyer has not relied on or bargained for any such warranties.

The services and amenities set forth in the Prospectus provided to Buyer will be provided or completed.

(b) Buyer's Selections. If Seller allows Buyer to select certain colors and/or materials in the Unit (which Seller is not obligated to do), Buyer understands and agrees that Buyer must submit their selections to Seller in writing within fourteen (14) days of the date the list of selections, if any, is made available to Buyer. If these selections, if any, are not delivered to Seller in writing within the time-frame stated above, then it is agreed and understood that the choices will be made by Seller in its sole and absolute discretion.

(c) Extras. All change orders for extras Buyer may want must be agreed to by Seller in writing under separate agreement (or addendum to this Agreement). Buyer will pay 100% of the cost of any change or extra when ordered by Buyer. The expenses paid for extras may be used by the Seller in furnishing the extras. If Seller omits any changes or extras, Seller will only have to refund to Buyer the amount Buyer paid to Seller for each item omitted. Except for such omissions, Buyer's payment for any change orders or extras is not refundable. Seller is not obligated to make any changes or provide any options.

(d) Completion Date. Seller agrees Buyer's Unit will be completed at the latest by December 31, 2007, but Buyer understands Seller cannot guarantee completion by that date. Seller will not be liable for any delays and Seller will not have to make, provide or compensate Buyer for any accommodations or costs as a result of any delays, and any delays will not permit Buyer to cancel, amend, or diminish any of Buyer's obligations.

(e) Interference with Construction. Prior to the closing, Buyer will not enter into or upon the Unit or Condominium or interfere with the progress of construction or with workmen, and Buyer will not cause such entry or interference by others. Seller will not be liable for any injury resulting from Buyer's breach of this paragraph. Notwithstanding anything herein to the contrary, Buyer may enter the Unit for the purpose of making one pre-closing inspection and preparation of a "punch list" of items of workmanship or materials (only within the boundaries of the Unit itself) which Seller may agree to correct within a reasonable time subsequent to closing. Said pre-closing inspection shall be made by appointment with Seller's representative prior to closing, and shall be scheduled on the date and at the time set by Seller. Both Buyer and Seller's representative shall sign the punchlist which is prepared at said pre-closing inspection. Seller shall only be required to correct those items of workmanship and materials which should be corrected in order to conform construction of the Unit to the prevailing standards of construction of similar units in Palm Beach County, Florida within a reasonable time after closing. Notwithstanding the preparation of a punchlist, Seller's obligation to correct any items will not be grounds for deferring the closing, nor imposing any condition on closing, and there shall be no postponement of closing, holdbacks of closing funds, or escrow of sums due to punchlist items.

(f) Completion. The issuance of a temporary, partial or permanent Certificate of Occupancy for Buyer's Unit will conclusively establish completion of Buyer's Unit and Buyer's unconditional obligation to close. If some items are not finished at closing, Buyer will not hold back any funds or object to a final non-escrow closing. The Common Elements and other portions of the Condominium Property need not then have certificates of occupancy, nor be completed.

(g) <u>Contingency for Presale Financing</u>. Notwithstanding other contrary provisions of this Agreement, Seller shall have the right, in Seller's sole discretion, to cancel this Agreement and cause Buyer's Deposits to be refunded in the event that Seller does not meet its requirements for presales of units in the Condominium. Seller must, however, notify Buyer of such a termination within one hundred eighty (180) days from the date on which the first purchaser of a unit in the Condominium executes a binding purchase agreement for such unit, otherwise Seller will be required to construct the Condominium and the Unit and otherwise proceed to perform its obligations under this Agreement. This paragraph shall not delay the effectiveness of this Agreement, which shall be immediate, but, rather, shall be deemed a "condition subsequent" to this Agreement. In the event of Seller's termination of this Agreement pursuant to this paragraph, upon such termination and the return of Buyer's Deposits, Seller and Buyer will be fully relieved and released from all obligations and liabilities under and in connection with this Agreement.

4. **CLOSING.** Upon the completion of the Unit as defined in Paragraph 3(f) hereinabove, the closing contemplated herein shall take place upon notification from the Seller to the Buyer, which notice shall set forth the time, date and place of closing (the "Closing Date"). The Closing Date specified in the aforementioned notice shall be set by Seller and shall not be less than three (3) nor more than ten (10) days from the date of such notice. No extension of Closing Date shall be effective unless given in writing by the Seller. The date set forth in said notice shall be the date utilized for calculation of all prorations and adjustments required by this Agreement. Notwithstanding the foregoing, the Seller may and is authorized to postpone the closing for any reason and Buyer agrees to close on the date Seller specifies in its notice of postponement. A change of time or place of closing only (one not involving a change of date) shall not require any additional notice period. Any notice of closing, postponement or rescheduling may be given orally, by telephone, telegraph, telex, facsimile, mail or other means of communication at Seller's option. All of these notices will be sent or directed to the address, or given by use of the telephone or telex or facsimile number specified on Page 1 of this Agreement, unless Seller has received written notice from Buyer of any change prior to the date the notice is given. These notices will be deemed effective on the date given or mailed. An affidavit of one of Seller's employees or agents that notice was given to Buyer will be conclusive for purposes of proving that notice was given.

If Buyer fails to receive any notice because Buyer failed to advise Seller of any change of address or telephone, telex or facsimile number, or because Buyer failed to pick up a letter when Buyer had been advised of an attempted delivery, or for any other reason, Buyer will not be relieved of Buyer's obligation to close on the scheduled date unless Seller agrees in writing to postpone the scheduled date. Buyer understands that Seller is not required to reschedule or to permit a delay in closing.

In the event the Buyer fails to close this transaction on the Closing Date for any reason other than for a delay desired, requested or caused by Seller (including the Buyer's failure to obtain or procure any document or instrument required at closing), the Buyer shall further be required to pay to the Seller, at the time of closing, a sum equal to the highest applicable lawful interest rate per annum calculated on a daily basis on the outstanding balance of the purchase price, from the Closing Date through and including the date of the actual closing. Provided, however, that the provisions of Paragraph 9 of this Agreement relating to default shall be considered paramount and shall prevail over the provisions of this paragraph at the option of Seller. The acceptance by Buyer of the deed of conveyance shall be conclusive that Seller has performed all its obligations under this Agreement.

5. **DEED; TITLE TO UNIT.** Seller and Buyer agree that Buyer is purchasing the Unit subject to those items more particularly set forth in this paragraph, and that title to the Unit which the Buyer will acquire according to the terms and conditions of this Agreement will be good and marketable, and subject to the "Permitted Exceptions" (as defined below). Seller will convey title to the Unit by special warranty deed, subject only to (i) real estate taxes, drainage district taxes and any other taxes and assessments imposed by other taxing authorities for the year of the closing and subsequent years; (ii) conditions, covenants, restrictions, agreements, limitations, reservations, declarations, dedications, and easements (iii) existing zoning ordinances, publicly dedicated rights-of-way, easements and other matters of public record, including, but not limited to, utility agreements of record, and any other restrictions upon the use of the Property or other requirements by governmental authorities having jurisdiction; (iv) any state of facts which an accurate survey of the Unit and Condominium would disclose; (v) any mortgage executed by the Buyer encumbering the Unit; (vi) the Declaration of Condominium and Exhibits thereto, including but not limited to the ByLaws and Articles of Incorporation and Rules and Regulations of the Condominium Association and any amendments to the foregoing; (vii) the Master Declaration of Covenants and Restrictions

4

for Latitude Delray Beach Master Association and Exhibits thereto, (the "Master Declaration") including but not limited to the Bylaws and Articles of Incorporation and Rules and Regulations of the Association promulgated pursuant thereto; (viii) the standard printed exceptions contained in an ALTA owner's policy of title insurance; (ix) Chapter 718, Florida Statutes and all other laws, ordinances and rules and regulations of all governmental agencies; and (x) pending governmental liens for public improvements as of closing (Seller will be responsible for certified governmental liens for public improvements as of closing). Seller hereby reserves the right to grant any and all easements over, upon, under and across the Condominium (including the Unit) which may be necessary or desirable in order to furnish utility service to the Condominium or any portion thereof and Buyer's title shall be subject to any such easements. The foregoing exceptions shall hereinafter be referred to as the "Permitted Exceptions."

If Seller cannot provide the quality of title described above, Seller will have a reasonable period of time (at least 90 days) to correct any defects in title, but Seller is not obligated to do so. If Seller cannot, or elects not to, correct the title defects, Buyer will have two options:

> a) Buyer can accept title in the condition Seller offers it (with defects) and pay the full purchase price for the Unit, waiving any right Buyer may have against Seller because of the defects in title; or

> b) Buyer can cancel this Agreement and receive a full refund of Buyer's Deposits and interest earned thereon, if any, whereupon both Seller and Buyer shall be relieved of all obligations under this Agreement.

Buyer shall also receive at closing:

> (i) a bill of sale for any appliances included in the Unit and, (ii) Seller's form of owner's affidavit ("No Lien"), protecting Buyer against mechanic's liens except for those resulting from any of Buyer's work.

6. **CLOSING COSTS**. Buyer understands that, in addition to the purchase price for the Unit, Buyer must pay certain other fees or "closing costs" when title is delivered to Buyer at closing. These include:

> (a) A "closing charge" equal to one and five-tenths percent (1.5%) of the Purchase Price (and of any charges for options or extras now or hereafter contracted for which are not included in the Purchase Price). This charge will be used, in part, to pay for the costs of officially recording the deed, for documentary stamp taxes, for the premium on the owner's title insurance policy and in reimbursement for certain of Seller's closing administration expenses and Seller's attorneys' fees in connection with closing (all of which costs will be paid for by Seller). The foregoing one and five-tenths percent (1.5%) closing charge is based on the assumption that documentary stamp taxes on the special warranty deed will be, at closing, at the rate of $.70 for each $100.00 of Purchase Price (and that there will be no surtax charged in connection with the transaction), and that the cost of title insurance will be based, at closing, on the minimum rates promulgated by the Florida Insurance Commissioner. In the event of increases in either or both of the foregoing, the imposition of a surcharge or any new governmental tax or charge on deeds or conveyances, appropriate additional charges or credits will be paid by Buyer at closing. Notwithstanding any subsequent reduction in the documentary stamp tax rate or promulgated title insurance rates, there shall be no decrease in the closing charge;

> (b) A working capital contribution to the Condominium Association in an amount equal to twice the monthly maintenance charge owed to such Association, which charge is payable directly to the Association to provide it with initial capital. This contribution will not be credited against regular assessments.

> (c) A reimbursement to Seller for any utility, cable or interactive communication deposits or hook-up fees which Seller may have advanced prior to closing for the Unit. The amount of this charge is now unknown.

> (d) Reimbursement to Seller, and/or Seller's closing agents, for charges incurred in connection with coordinating closing with Buyer and/or Buyer's lender, including, without limitation, charges for messenger expenses, long distance telephone calls, photocopying expenses, telecopying charges and others.

5

In addition, if Buyer obtains a loan for any portion of the Purchase Price, Buyer will be obligated to pay any loan fees, closing costs, escrows, appraisals, credit fees, lender's title insurance premiums, prepayments and all other expenses charged by any lender giving Buyer a mortgage, if applicable. Additionally, if Buyer obtains a loan and elects to have Seller's closing agent act as "loan" closing agent as well, Buyer agrees to pay, in addition to any other sums described in this Agreement, such closing agent a sum equal to $350.00 as a settlement fee for the agent's closing services related to acting as "loan closing agent", plus any sums necessary for reimbursement of the agent's applicable costs or premiums for any title policies, searches or endorsements.

Current expenses of the Unit (for example, taxes and governmental assessments, current monthly assessments of the Association and any interim service fee imposed by governmental authority) will be prorated between Buyer and Seller as of the date of closing. Additionally, at closing, Buyer shall be obligated to prepay the next month's maintenance assessment to the Association. If taxes for the year of closing are assessed on the Condominium as a whole, Buyer shall pay Seller, at closing, the Unit's allocable share of those taxes (as estimated by Seller and subject to reproration when the actual tax bill is available) for the Unit from the date of closing through the end of the applicable calendar year of closing. If taxes for the year of closing are assessed on a unit-by-unit basis, Buyer and Seller shall prorate taxes as of the closing date based upon the actual tax bill, if available, or an estimate by Seller, if not available, with Buyer responsible for paying the full amount of the tax bill and Seller reimbursing Buyer for Seller's prorated share of those taxes. Buyer agrees that Seller's prorated share of the taxes due as of closing need not be paid to Buyer, however, until the actual tax bill is presented to Seller, and any proration based on an estimate of the current year's taxes shall be subject to reproration upon request of either party.

7. **WARRANTY AND DISCLAIMER.** Specimen copies of all manufacturer's warranties which will be passed through to Buyer at closing and which are not expressly warranted by Seller have been made readily available for Buyer's review in the "Binder" located in the sales office and Buyer acknowledges disclosure of such warranties and the location thereof by Seller. Buyer, to the extent permitted by law, is purchasing the Unit and its interest in the common elements "AS IS" and should undertake whatever inspections of the Unit and common elements Buyer so desires in order to assure Buyer as to the quality and condition of the buildings and improvements.

**EXCEPT FOR THE WARRANTIES CONTAINED IN THE DEED OF CONVEYANCE, ANY WRITTEN WARRANTIES BY DEVELOPER DELIVERED AT CLOSING (WHICH DOES NOT INCLUDE MANUFACTURERS' WARRANTIES PASSED THROUGH TO BUYER), AND THOSE WARRANTIES CONTAINED IN SECTION 718.203, FLORIDA STATUTES, NO WARRANTIES, EXPRESSED OR IMPLIED, REPRESENTATIONS, UNDERSTANDINGS, GUARANTIES OR PROMISES HAVE BEEN MADE TO OR RELIED UPON BY BUYER IN MAKING THE DETERMINATION TO EXECUTE AND CLOSE PURSUANT TO THIS AGREEMENT AND, TO THE MAXIMUM EXTENT PERMITTED BY LAW, ALL WARRANTIES, INCLUDING IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY AND HABITABILITY, AND ALL WARRANTIES IMPOSED BY STATUTE (EXCEPT TO THE EXTENT THEY CANNOT BE DISCLAIMED) ARE DISCLAIMED.**

As to any implied warranties which cannot be disclaimed either in whole or in part, incidental and consequential damages are disclaimed and Seller shall have no responsibility for any incidental or secondary, consequential damages, including, but not limited to, any claims for personal injury, property damage or emotional distress. No warranties or guaranties are given as to consumer products as defined in 15 U.S.C., Section 2301, et seq. (Magnuson-Moss Warranty Act), and no written warranties whatsoever are intended by this Agreement. Seller has not given and buyer has not relied on or bargained for any such warranties. This paragraph shall survive closing.

All manufacturers' warranties will be passed through to Buyer at closing and all items covered by manufacturers' warranties are expressly not warranted by Seller.

8. **ESCROW OF DEPOSITS.** Seller has established an escrow account with Messrs. Boose Casey Ciklin Lubitz Martens McBane & O'Connell ("Escrow Agent"), with offices located at 515 N. Flagler Drive, 19th Floor, West Palm Beach, FL 33401 and all Deposits shall be held and disbursed pursuant to and in accordance with the terms of this Agreement, Chapter 718, Florida

Statutes, and an Escrow Agreement. Seller and Buyer hereto agree to be bound by the terms, conditions, provisions and agreements of said Escrow Agreement. The Buyer may obtain a receipt for any and all escrow deposits from the Escrow Agent upon request. Seller may change escrow agents (as long as the new escrow agent is authorized to be an escrow agent under applicable Florida law), in which case Buyer's Deposits (and any interest actually earned on them) may be transferred to the new escrow agent at Seller's discretion. At closing, all Deposits not previously disbursed to Seller (and any interest actually earned) will be released to Seller. If Buyer properly terminates this Agreement in the manner allowed in this Agreement or by applicable law, all Deposits will be returned to Buyer within a reasonable period from the effective date of Buyer's cancellation (or date Buyer's deposit check(s) clear, if later). In this Agreement, reference to Deposits will be considered to automatically include all interest actually earned on the deposits so that the party who/which becomes entitled to receive the Deposits will also receive any interest earned thereon (except to the extent otherwise provided herein or under applicable law), provided that Buyer will not be entitled to a credit against the Total Purchase Price for the Unit for any interest earned. Interest on Deposits will be governed by the following: (1) no interest will be deemed earned on Deposits unless it actually accrues and is paid by the applicable bank or other institution; and (2) Seller is not required to place (or cause to be placed) Deposits in an account which bears interest at all or at any particular rate. Buyer recognizes that if Seller uses all or any portion of the Deposits in construction, or if all or any portion of the Deposits are retained in non-interest bearing accounts, no interest will be earned or deemed to be earned (even if Seller indirectly benefits from any such use or retention). If the Deposits are in an interest bearing account, Escrow Agent may select the kind of account (low-yielding or otherwise) in its sole discretion. Any Deposits made by Buyer in excess of ten percent (10%) of the Total Purchase Price may be used by Seller for paying construction costs of the Condominium as provided by Florida Law. Nothing contained herein shall be deemed a waiver of any right or remedy Seller or Buyer may have at law or in equity.

Except where required by law, all interest earned on Buyer's Deposits shall accrue solely to the benefit of Seller, and shall not be credited against the Total Purchase Price of the Unit. No interest will be assumed to be earned, unless in fact said sums are invested in an interest bearing account and do in fact earn interest.

9.  **DEFAULT.** In the event that Buyer fails to close on the purchase of the Unit as provided in this Agreement, or in the event that Buyer fails to perform or observe any of Buyer's other obligations, covenants or agreements contained in this Agreement, Seller may, at its option, cancel this Agreement by notice to Buyer or, in the alternative, Seller shall have the right to seek specific performance of Buyer's obligations under this Agreement. In the event Seller elects to cancel this Agreement, the portion of the Deposits posted by Buyer towards the Total Purchase Price that is equal to or less than twenty percent (20%) of the Total Purchase Price shall be paid to and be retained by Seller as liquidated and agreed upon damages for Buyer's default, whereupon all rights and privileges of Buyer under this Agreement shall terminate. The portion of the Deposits in excess of twenty percent (20%) of the Total Purchase Price, if any, shall be returned to Buyer. Notwithstanding the foregoing, any deposits or payments for options, extras and/or upgrades shall also be retained by Seller as liquidated and agreed upon damages. Seller has removed the Unit from the market and has incurred substantial direct and indirect expenses relative to sales, models, advertising and similar items, and Buyer recognizes that no method could determine the precise damage resulting from Buyer's default and that such liquidated damages are a fair and reasonable remedy. Either the cancellation of this Agreement and the retention of the portion of the Deposits equal to or less than twenty percent (20%) of the Total Purchase Price and the retention of deposits or payments for options, extras and/or upgrades, as liquidated and agreed upon damages, or, in the alternative, specific performance, shall be the Seller's sole remedy in the event of Buyer's default. Upon any cancellation of this Agreement, neither party shall have any further obligations to the other. Any damage or loss that occurs to the Unit while Buyer is in default will not affect either Seller's right to retain that portion of the Deposits equal to or less than twenty percent (20%) of the Total Purchase Price and deposits or payments for options, extras and/or upgrades as liquidated damages to the extent provided herein, or Seller's right to seek specific performance. Notwithstanding the foregoing to the contrary, Seller shall give Buyer written notice of Buyer's breach or default under this Agreement and give Buyer the opportunity to correct such breach or default within twenty (20) days after Buyer's receipt of such notice. Escrow Agent, upon being notified of Buyer's breach or default under this Agreement and Buyer's failure to cure such breach or default after Buyer's receipt of written notice as provided above, shall forthwith pay to Seller the Deposits and any interest earned thereon, and Escrow Agent shall be under no obligation to make any independent investigation or confirmation of the alleged breach or default by Buyer.

7

Notwithstanding any of the provisions of this Agreement to the contrary, if Buyer loses rights and interest in the Unit as a result of a default or breach under this Agreement which occurs after Buyer has paid twenty percent (20%) of the Total Purchase Price, excluding any interest owed under this Agreement, Seller (or Seller's successor) shall refund to Buyer any amount which remains after subtracting (A) twenty percent (20%) of the Total Purchase Price, excluding any interest owed under this Agreement, or the amount of damages incurred by Seller (or Seller's successor) as a result of such breach, whichever is greater, from (B) the amount paid by Buyer towards the Total Purchase Price, excluding any interest paid under this Agreement.

Seller's Default. If Seller defaults in the performance of this Agreement, Buyer shall give the Seller thirty (30) days notice of such default, and if Seller has not cured within such period, then, except with respect to the right (if any) of rescission, which right the Buyer hereby waives, nothing contained herein shall be deemed to restrict Buyer's other remedies, if Buyer shall be entitled to such remedies under applicable law, including the right to seek specific performance.

10. **CONDOMINIUM DOCUMENTS.** Buyer hereby acknowledges receipt of copies of those instruments and documents listed on Exhibit "A" attached hereto and by this reference made a part hereof, the floor plans of the Condominium Unit, and all other documents required to be furnished by Florida Statutes, Chapter 718 (the "Condominium Documents"). Buyer agrees that occupancy of the Unit shall at all times be subject to the provisions of the Condominium Documents. Seller has delivered to Buyer a full set of the Condominium Documents, and Buyer shall execute a receipt in the form of Exhibit "A" therefor. Seller reserves the right, in its sole discretion, to amend any of the Condominium Documents, provided that a copy of such amendment is transmitted to Buyer. Notwithstanding anything to the contrary contained herein, upon recordation of the Condominium Documents, Seller shall only have the right to amend the Condominium Documents in accordance with the Florida Statutes, Chapter 718. Seller shall make available to Buyer, for Buyer's inspection at Seller's place of business, which is convenient to the site, a copy of the complete Seller's Plans and Specifications for the construction of the Unit and the common elements appurtenant to the Unit. If this Agreement is cancelled for any reason, Buyer will return to Seller all of the Condominium Documents delivered to Buyer in the same condition received, reasonable wear and tear excepted, or Buyer shall pay to Seller $50.00 if Buyer fails to return same to Seller.

11. **ASSIGNABILITY.** This Agreement shall be binding upon the parties hereto, their heirs, personal representatives, successors and assigns. This Agreement may not be assigned by Buyer without the prior written consent of Seller, which consent may be arbitrarily withheld and, if given, shall be subject to such conditions as may be specified by Seller including, but not limited to, the payment to Seller of an assignment fee. The fact that Seller refuses to give its consent to an assignment shall not give rise to any claim for any damages against Seller. If Buyer is a corporation, partnership other business entity, trustee or nominee, a transfer of any stock, partnership interest, equity, beneficial or principal interest in Buyer will constitute an assignment of this Agreement requiring consent. This Agreement shall not be recorded in the office of the clerk of any circuit court of the State of Florida and any recording by Buyer shall be considered a material breach of this Agreement. Buyer acknowledges that Seller's ability to sell other units and the value of such units will be diminished and harmed by Buyer's attempting to resell the Unit through local brokers, or advertising the Unit for sale in publications in the general area where the unit is located, prior to Buyer's receiving fee simple title, and that Seller shall be irreparably harmed by such actions. Therefore, Buyer covenants not to enter into a listing agreement for the sale of the Unit with a broker maintaining offices in Broward, Palm Beach or Dade County, Florida, or to advertise or cause the Unit to be advertised for sale in any newspaper, trade magazine or other publications published or distributed in Broward, Dade or Palm Beach County, Florida, prior to obtaining fee simple title. A breach of the provisions of this paragraph shall result in a default hereunder by Buyer, entitling Seller to exercise its remedies under this Agreement.

12. **GOVERNING LAW.** This Agreement shall be governed by and construed in accordance with the laws of the State of Florida. Venue for any action, litigation or proceeding arising out of or concerning this Agreement shall be in Palm Beach County, Florida, and the parties expressly waive their right to venue elsewhere.

13. **NOTICES.** Notices to Seller shall be given by United States certified mail, postage prepaid and return receipt requested, hand delivery or a nationally recognized overnight courier service. All notices shall be sent to the addresses of the parties set forth on the first page of this

Agreement. Either party may change its address for notice by giving notice to the other as provided herein. All notices shall be deemed to be have been given to and received by the receiving party either when actually delivered or when delivery is refused. Notwithstanding the foregoing, any notice by Seller of closing, closing extension, postponement or rescheduling pursuant to Paragraph 4 hereof may be given orally, by telephone, telegram, facsimile, telex or other means of communication and an affidavit from Seller, its agents or employees, shall be conclusive of the giving of such notice. Such form of notice shall be deemed effective when given.

14. **INSULATION DISCLOSURE.** The Seller discloses to the Buyer that insulation will be installed in the Condominium Unit as follows:

|  | Type | Thickness | R-Value |
|---|---|---|---|
| Exterior Walls | Reflective Foil | N/A | R-4.1 |
| Roof | Concrete | N/A | R-19 minimum |
| Boundary Walls | Reflective Foil | N/A | R-4.1 |

Buyer understands that the R-values given are based solely on information provided Seller by the manufacturers of the insulation and that Seller is not responsible for their errors. These insulation disclosures are subject to Seller's right to make changes and to applicable limitations of liability stated in this Agreement.

15. **ASSESSMENT AND MAINTENANCE.** Buyer understands and agrees to pay assessments to LATITUDE DELRAY BEACH ASSOCIATION, INC., a Florida corporation not for profit (the "Condominium Association") and LATITUDE DELRAY BEACH MASTER ASSOCIATION, INC. for utilities, water and sewer service, garbage collection, administration fees, insurance, maintenance of common elements, and any other expenses incident to the operation of the Condominium and the Community of Latitude Delray Beach of which the Condominium forms a part from the date of closing forward. Buyer agrees to be bound by all the Condominium Documents (as defined above herein) including, but not limited to, the Declaration of Condominium and the Master Declaration, as the same may be amended from time to time.

16. **PROSPECTUS.** The condominium documents required by Section 718.504, Florida Statutes (2000), to be provided by Seller to Purchaser are defined as the Prospectus together with all exhibits thereto. Purchaser hereby acknowledges receipt of the prospectus and all exhibits. Such documents and items are subject to amendment if, in the opinion of Seller, amendment is required to satisfy the requirements of lenders, governmental agencies or the best interests of the development and operation of the Condominium. If any such amendment shall occur which materially and adversely affects the interests of Purchaser, then, in addition to Purchaser's initial right of rescission for the fifteen (15) day period provided for herein, there shall exist in favor of Purchaser the right of rescission for a fifteen (15) day period commencing on the date of receipt by Purchaser of a copy of the amendment; provided, however, upon the Closing such rescission rights shall terminate.

17. **ENERGY PERFORMANCE AND ENERGY EFFICIENCY RATING DISCLOSURES**:

(a) Energy Performance Level Display Card. At the time of completion of the Unit, the builder of the new residential building will be able to complete and certify an Energy Performance Level Display Card in accordance with Section 553.9085, Florida Statutes, which will be furnished to Purchaser upon request to Seller.

(b) General Information Brochure. A copy of the Florida Building Energy-Efficiency Rating System brochure prepared by the Florida Department of Community Affairs in accordance with Section 553.996, Florida Statutes, is attached hereto as Exhibit "B" and incorporated herein by this reference. PURCHASER ACKNOWLEDGES RECEIPT OF THE ENERGY-EFFICIENCY RATING BROCHURE DISTRIBUTED BY THE STATE OF FLORIDA DEPARTMENT OF COMMUNITY AFFAIRS AND STATES THAT PURCHASER WAIVES THE OPPORTUNITY TO OBTAIN AN ENERGY-EFFICIENCY RATING ON THE UNIT.

9

(c) <u>Energy-Efficiency Rating Disclosure</u>. Seller is providing the disclosure attached hereto as Exhibit "B" and incorporated herein by this reference to Purchaser in compliance with Section 553.9085 and 553.996, Florida Statutes. This Disclosure Statement is intended for the sole and exclusive use of Purchaser for this transaction only and Seller shall not be liable or responsible to any third party who has relied upon the information contained herein.

18.  **DECLARATION AND CONDOMINIUM ASSOCIATION.** By purchasing the Unit, Buyer automatically becomes subject to the "Master Declaration of Covenants, Conditions and Restrictions" (the "Master Declaration"). For further information, Buyer should refer to the text of that certain Master Declaration of Covenants, Conditions and Restrictions, to be recorded in the Public Records of Palm Beach County, Florida, prior to Closing, as the same may be amended from time to time. Buyer acknowledges and understands that Buyer will be required to pay assessments to the Condominium Association and the Condominium Association may collect assessments from the Unit Owner to pay the assessments as set forth in the Master Declaration, and that in the event Buyer defaults in payment of any assessments, the Condominium Association as well as the Master Association will have a lien on the unit, which lien may be foreclosed in the manner prescribed by law for the foreclosure of mortgages. This provision shall survive the Closing and the execution and delivery of the deed.

19.  **TIME.** Time is of the essence for making all payments due pursuant to this Agreement and for the Closing of the transaction contemplated herein. Time otherwise may be made of the essence by not less than five (5) days advance written notice.

20.  **MISCELLANEOUS.**

   a.  Time is of the essence in this Agreement with respect to Buyer's obligations hereunder.

   b.  The Unit has not been previously occupied.

   c.  Buyer acknowledges that Buyer acquires no right, title, interest or lien rights in the Unit prior to the conveyance of the title and Buyer agrees not to file in the Public Records any claim, memorandum or notice (including a Lis Pendens) concerning any dispute with Seller relative to the subject matter of this Agreement. Any such recording shall be a default herein.

   d.  Buyer subordinates all of Buyer's right, title and interest in and to the Unit to the lien of any mortgage (and any modifications or extensions thereto) presently existing or hereafter created by the Seller for the purpose of acquiring funds for the construction and/or renovation of the improvements referenced herein.

   e.  Seller shall have the right to litigate ad valorem tax matters, impact charges, service fees and interim and/or special assessments concerning the Unit or underlying lands for prior years and the year of closing.

   f.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and said counterparts shall constitute but one and the same instrument which may be sufficiently evidenced by one such counterpart.

   g.  Buyer understands and agrees that Seller's in-house sales personnel are agents of Seller only (and are not Buyer's agents and/or dual agents). As Seller's agents, they owe the following duties: (i) to Seller, a fiduciary duty to represent the interests of, and use utmost care, integrity, honesty and loyalty to, Seller, and (ii) to both Buyer and Seller, the duty to diligently exercise reasonable skill and care in performance of the agent's duties, a duty of honesty and fair dealing and good faith, and a duty to disclose all facts known to the agent materially affecting the value or desirability of the Unit that are not known to, or within the diligent attention and observation of, the parties. Seller's agents are not obligated to reveal to either party any confidential information obtained from the other party which does not involve the affirmative duties of the agent(s) set forth in this paragraph.

   h.  In connection with any alternative dispute resolution proceedings or litigation, including appellate proceedings, arising out of this Agreement, the prevailing party shall be entitled to recover attorneys' fees and costs at trial, bankruptcy court and all appellate levels.

   i.  Neither this Agreement nor any notice of it shall be recorded in any Public Records and to do so shall be a substantive breach of this Agreement.

   j.  In case any one or more of the provisions contained in this Agreement shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, the invalidity, illegality, or unenforceability shall not affect any other provision and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision has never been contained in this Agreement.

k.  Buyer authorizes Seller to record the documents which Seller believes necessary to establish, operate, maintain and improve the Condominium and/or the Community in which the Condominium is located, as well as all other documents which Seller deems necessary or appropriate, and all amendments and supplements to them in the Public Records of Palm Beach County, Florida.

21.  **PROPERTY TAX DISCLOSURE SUMMARY.** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR FURTHER INFORMATION.

22.  **MOLD.** Mold is part of the natural environment that, when accumulated in sufficient quantities, may present health risks to susceptible persons. For more information, contact the county indoor air quality specialist or other appropriate professional.

23.  **ADJUSTMENTS WITH THE ASSOCIATION.** Buyer understands that Seller may have to advance money to the Condominium Association to permit it to pay for certain of its initial expenses (for example, but without limitation, insurance premiums, common elements/area utility charges and deposits, permit and license fees, charges for elevators and other service contracts, salaries of Association employees and other similar expenses). Seller is entitled to be reimbursed by the Condominium Association for all of its sums advanced by it. The Condominium Association may reimburse Seller out of assessments paid by Buyer and other unit owners as those assessments are collected at a later date, or by way of a credit against any obligations Seller may have to pay to the Condominium Association, at Seller's election.

24.  **BUDGET.** Buyer understands that the estimated operating budget (the "Budget") contained in the Condominium Documents provide only an estimate of what it will cost to run the Association during the period of time stated in the Budget. The Budget is not guaranteed. Seller may make changes in the Budget at any time to cover increases or decreases in actual expenses or in estimates. Those changes will not give Buyer any right to cancel this Agreement.

25.  **LIABILITY FOR CASUALTY LOSS.** If the Condominium Unit is damaged by fire or other casualty after date of this Agreement, but prior to closing, then Seller shall be financially responsible for the loss. If, however, such damage occurs after closing, then the Condominium Association shall have the right to decide whether or not to repair the Unit. After closing, neither the Condominium Association nor Seller shall be financially responsible to Buyer for the loss of any property lying within the boundaries of the Unit, including but not limited to, personal property of Buyer.

In the event Seller or the Condominium Association decides to repair the damage, then Seller and/or the Condominium Association shall have a reasonable time to complete repairs. Any such repair work will be judged by the same standards used to evaluate new construction. In the event of the foregoing, Buyer shall not have any right to a reduction in the Total Purchase Price, nor have any claim against Seller or the Condominium Association, and Buyer agrees to accept title on the scheduled Closing Date (provided the repairs are finished by the Closing Date). Any monies that Seller and/or Condominium Association receive in settlement of any damages (insurance, etc.) will belong to Seller and/or Condominium Association, as the case may be. In the event Buyer receives any money in connection with the damage, then Buyer shall turn it over to Seller or the Condominium Association, as the case may be. If Seller or the Condominium Association decides not to repair the damage, then, and in that event, this Agreement shall be cancelled and all Deposits shall be returned to Buyer, and the parties shall be relieved of all further obligations, one unto the other. Notwithstanding anything to the contrary contained hereinabove, in the event Unit is damaged by casualty prior to closing, Seller may elect not to repair, and to terminate this Agreement.

26.  **SELLER'S USE OF THE CONDOMINIUM PROPERTY.** As long as Seller owns a unit or units in the Condominium, Seller and its agents can keep offices and model apartments within the Condominium Property. Seller's sales people can show these units, erect advertising signs and do whatever else is necessary in Seller's opinion to help sell or lease units or develop and manage the Condominium Property, but Seller's use of the Condominium Property

11

shall be appropriate in Seller's opinion and cannot unreasonably interfere in Seller's opinion, with Buyer's use and enjoyment of the Unit. This paragraph shall survive and continue to be effective after closing.

27. **SURVIVAL.** The provisions and disclaimers in this Agreement which are intended to have effect after closing shall survive (continue to be effective after) closing and delivery of deed.

28. **JOINT AND SEVERAL OBLIGATION.** If more than one person signs this Agreement as Buyer, each person shall be liable for full performance of all Buyer's duties and obligations hereunder. Seller may enforce this Agreement against each of the Buyers as individuals or together.

29. **WAIVER.** Seller's waiver of any of its rights or remedies shall not operate to waive any other of Seller's rights or remedies or to prevent Seller from enforcing the waived right or remedy in another instance.

30. **NO REPRESENTATIONS.** No broker, salesperson, or other person has been authorized to give any information or make any representations other than those contained in writing within the offering materials provided by Seller, and if given or made, such information or representations must not be relied upon as having been authorized by Seller. By executing this Agreement, Buyer acknowledges that no representations have been or are made concerning the economic benefits to be derived from the rental or resale of the Unit.

31. **RADON GAS.** This disclosure is required by Section 404.056 of the Florida Statutes.

Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

Nothing contained herein shall be deemed to be a representation or warranty by Seller as to the existence or non-existence of Radon Gas in or about the Unit or Condominium.

32. **INDUCEMENT.** Buyer acknowledges that the primary inducement for Buyer to purchase under this Agreement is the Unit itself, and not the recreational amenities and other common elements.

33. **INTERPRETATION.** Notwithstanding that this Agreement was prepared by one party hereto, it shall not be construed more strongly against or more favorably for either party; it being known that both parties have had equal bargaining power, have been represented (or have had the opportunity to be represented) by their own independent counsel and have equal business acumen such that any rule of construction that a document is to be construed against the drafting party shall not be applicable. Buyer acknowledges that Buyer has had ample opportunity to inspect other similar condominiums and condominium documents, that Seller has clearly disclosed to Buyer the right to cancel this Agreement for any reason whatsoever, including the dissatisfaction Buyer may have with this Agreement or the Condominium Documents, within 15 days of the date Buyer executes this Agreement or has received the Condominium Documents, whichever is later, and that although Seller's sales agents are not authorized to change the form of this Agreement, they have strict instructions from Seller to communicate any of Buyer's requests for such changes to Seller's management, which has given Buyer the opportunity to discuss and negotiate such changes.

34. **LEGAL DOCUMENTS.** This Condominium Sale and Purchase Agreement and other purchase documents, and all disclosure materials and brochure materials, are important legal documents and, if not understood, Buyer should seek legal advice.

35. **ENTIRE AGREEMENT.** This Agreement is wholly integrated and shall supersede any and all previous and current understandings and agreements between Buyer and Seller, and this Agreement represents the entire agreement between Buyer and Seller. No modification of this Agreement shall be valid unless in writing and signed by both Buyer and Seller. Any modification not in compliance herewith shall be null and void and of no force or effect. Brochures and advertising representations and illustrations constitute general concepts only, and are subject to change and modification at Seller's sole discretion.

36. **ENERGY-EFFICIENCY RATING DISCLOSURE.** TO PROSPECTIVE BUYERS: Florida law gives Buyer the right to have the energy-efficiency rating determined for the Unit. Should Buyer wish to have the Unit rated, Buyer must arrange to have the energy-efficiency rating determination performed at Buyer's expense.

37. **CONSTRUCTION INDUSTRIES RECOVERY FUND.** Pursuant to Section 489.1425 of the Florida Statutes, Seller provides the following notice. PAYMENT MAY BE AVAILABLE FROM THE CONSTRUCTION INDUSTRIES RECOVERY FUND IF YOU LOSE MONEY ON A PROJECT PERFORMED UNDER CONTRACT, WHERE THE LOSS RESULTS FROM SPECIFIED VIOLATIONS OF FLORIDA LAW BY A STATE-LICENSED CONTRACTOR. FOR INFORMATION ABOUT THE RECOVERY FUND AND FILING A CLAIM, CONTACT THE FLORIDA CONSTRUCTION INDUSTRY LICENSING BOARD AT THE FOLLOWING TELEPHONE NUMBER AND ADDRESS: (904) 727-6530, 7960 ARLINGTON EXPRESSWAY, SUITE 300, JACKSONVILLE, FLORIDA 32211.

38. **BROKERAGE.** Other than real estate brokers Seller has acknowledged in writing, Buyer represents that there are no other real estate brokers involved in this transaction, except _Mazor Realty_, address: _4400 N Federal Hwy #210 Boca Raton FL 33431_; Phone _(561) 362-5822_, and Buyer covenants to defend, indemnify and hold Seller and Seller's broker harmless against all claims of real estate brokers or salesmen due to acts of the Buyer or the Buyer's representatives, and Buyer shall be liable for Seller's costs, including attorneys' fees and damages, which arise by virtue of such claims as set forth in this paragraph. Seller will not be liable for any brokerage commission other than the commission due Seller's broker and those identified in this paragraph which shall be compensated based upon the commission program then in effect by Seller.

THIS AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER, AND RECEIPT BY BUYER OF ALL OF THE ITEMS REQUIRED TO BE DELIVERED TO HIM OR HER (BUYER) BY THE DEVELOPER (SELLER) UNDER SECTION 718.503, FLORIDA STATUTES. THIS AGREEMENT IS ALSO VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF RECEIPT FROM THE DEVELOPER (SELLER) OF ANY AMENDMENT WHICH MATERIALLY ALTERS OR MODIFIES THE OFFERING IN A MANNER THAT IS ADVERSE TO THE BUYER. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN 15 DAYS AFTER THE BUYER HAS RECEIVED ALL OF THE ITEMS REQUIRED. BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING.

39. PURSUANT TO APPLICABLE LAW, SELLER MAKES THE FOLLOWING DISCLOSURE.

### CHAPTER 558 NOTICE OF CLAIM

CHAPTER 558, FLORIDA STATUTES CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY BRING ANY LEGAL ACTION FOR AN ALLEGED CONSTRUCTION DEFECT IN YOUR HOME. SIXTY DAYS BEFORE YOU BRING ANY LEGAL ACTION, YOU MUST DELIVER TO THE OTHER PARTY TO THIS CONTRACT A WRITTEN NOTICE REFERRING TO CHAPTER 558 OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE SUCH PERSON THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND TO CONSIDER MAKING AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER WHICH MAY BE MADE. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER THIS FLORIDA LAW WHICH MUST BE MET AND FOLLOWED TO PROTECT YOUR INTERESTS.

40. **WAIVER OF TRIAL BY JURY.** SELLER AND BUYER HEREBY MUTUALLY, KNOWINGLY AND VOLUNTARILY WAIVE THE RIGHT TO A TRIAL BY JURY, AND NEITHER OF THEM SHALL SEEK A TRIAL BY JURY, IN ANY LAWSUIT OR PROCEEDING (INCLUDING, WITHOUT LIMITATION, ANY COUNTERCLAIM) BASED

Aug 06 2008 7:58AM  WEST CARY DENTAL  9193639770  p.15

UPON, ARISING OUT OF OR RELATED TO THIS CONTRACT OR THE TRANSACTION CONTEMPLATED BY THIS CONTRACT. THE WAIVER CONTAINED HEREIN IS IRREVOCABLE AND SHALL BE SUBJECT TO NO EXCEPTIONS. SELLER AND BUYER HEREBY ACKNOWLEDGE HAVING READ AND UNDERSTOOD THE MEANING AND RAMIFICATIONS OF THE WAIVER PROVISION.

This Agreement shall not be binding upon the Seller until executed by an authorized representative of Savion Holdings, LLC.

IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year set forth below.

**WITNESSES:**  **SELLER:**

Signed, sealed and delivered
in the presence of:

HATEL S. APPO
Witness Signature
_____
Witness Printed Name

_____
Witness Signature
HARLY PEAT
Witness Printed Name

SAVION HOLDINGS, LLC
a Florida limited liability company

By: _____
Authorized Representative

Date of Execution: Feb 7 06

**ANY PAYMENT IN EXCESS OF TEN PERCENT (10%) OF THE PURCHASE PRICE MADE TO DEVELOPER (SELLER) PRIOR TO CLOSING PURSUANT TO THIS CONTRACT (AGREEMENT) MAY BE USED FOR CONSTRUCTION PURPOSES BY THE DEVELOPER (SELLER).**

_____
Witness Signature
ANUJA PATEL
Witness Printed Name

**BUYER:**

Name: Amit Patel

_____
Witness Signature

Name: _____

_____
Witness Printed Name

Date of Execution: _____

14

EXHIBIT "A"

## RECEIPT FOR CONDOMINIUM DOCUMENTS

The undersigned acknowledges that the documents checked below have been received or, as to plans and specifications, made available for inspection.

Name of Condominium:   LATITUDE DELRAY BEACH, a Condominium
Address of Condominium:   766 S.E. 5th Avenue, Delray Beach, Florida 33483

Place a check in the column by each document received or, for the plans and specifications, made available for inspection. If a document uses a different name, substitute the correct name or place in parenthesis. If an item does not apply, place "N/A" in the column.

| DOCUMENT | RECEIVED BY HARD COPY | RECEIVED BY ALTERNATIVE MEDIA |
|---|---|---|
| Prospectus Text | X | |
| Declaration of Condominium | X | |
| Articles of Incorporation | X | |
| Bylaws | X | |
| Estimated Operating Budget | X | |
| Form of Agreement for Sale or Lease | X | |
| Rules and Regulation | X | |
| Covenants and Restrictions | N/A | |
| Ground Lease | N/A | |
| Management and Maintenance Contracts for More Than One Year | N/A | |
| Renewable Management Contracts | N/A | |
| Lease of Recreational and Other Facilities to be Used Exclusively by Unit Owners of Subject Condominium(s) | N/A | |
| Lease of Recreational and Other Facilities to be Used by Unit Owners with Other Condominiums | N/A | |
| Declaration of Servitude (Master Declaration) | X | |
| Sales Brochures | X | |
| Phase Development Description | N/A | |
| Form of Unit Lease if a Leasehold | N/A | |
| Description of Management for Single Management of Multiple Condominiums | N/A | |
| Conversion Inspection Report | N/A | |
| Conversion Termite Inspection Report | N/A | |
| Plot Plan | X | |
| Floor Plan | X | |
| Survey of Land and Graphic Description of Improvements | X | |
| Frequently Asked Questions & Answers Sheet | X | |
| Financial Information | N/A | |
| State or Local Acceptance/Approval of Dock or Marina Facilities | N/A | |
| Evidence of Developer's Ownership, Leasehold or Contractual Interest in the Land Upon Which the Condominium is to be Developed | X | |
| Executed Escrow Agreement | X | |
| Other Documents (Insert Name of Document) | N/A | |
| Alternative Media Disclosure Statement | N/A | |

| DOCUMENT | RECEIVED OR | MADE AVAILABLE | BY ALTERNATIVE MEDIA |
|---|---|---|---|
| Plans and Specifications | | X | |

THE PURCHASE AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF EXECUTION OF THE PURCHASE AGREEMENT BY THE BUYER AND RECEIPT BY THE BUYER OF ALL OF THE DOCUMENTS REQUIRED TO BE DELIVERED TO HIM OR HER BY THE DEVELOPER. THE AGREEMENT IS ALSO VOIDABLE BY THE BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF RECEIPT FROM THE DEVELOPER OF ANY AMENDMENT WHICH MATERIALLY ALTERS OR MODIFIES THE OFFERING IN A MANNER THAT IS ADVERSE TO THE BUYER. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN 15 DAYS AFTER THE BUYER HAS RECEIVED ALL OF THE DOCUMENTS REQUIRED. BUYER'S RIGHT TO VOID THE PURCHASE AGREEMENT SHALL TERMINATE AT CLOSING.

Executed this _____ day of _____, 200__.

_____   Purchaser or Lessee   _____
Signature of Purchaser                  or                Signature of Lessee

15